## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERICAN SIGNATURE, INC.**<br>4300 E. 5th Avenue<br>Columbus, OH 43219, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Case No.** |
| | : | |
| **THOR EQUITIES, LLC**<br>25 West 39th St., 11th Floor<br>New York, NY 10018 | : | **COMPLAINT FOR<br>DECLARATORY RELIEF** |
| | : | |
| | : | |
| and | : | |
| | : | |
| **THOR CHELTENHAM MALL, L.P.**<br>c/o Thor Equities, LLC<br>25 West 39th St., 11th Floor<br>New York, NY 10019, | : | |
| | : | |
| Defendants. | : | |

---

### COMPLAINT

---

Plaintiff American Signature, Inc. ("American Signature"), by and through its undersigned counsel, files this Complaint against Thor Cheltenham Mall, L.P. and Thor Equities, LLC (collectively, "Thor") seeking a declaration that (i) American Signature's proportionate share of center expenses, real estate taxes and insurance is governed by Article 5(A) of the Lease; (ii) the rent commencement date is August 9, 2010 under Article 1(D) of the Lease; and (iii) Thor is obligated, upon American Signature's exercise of its audit right under Article 5(D) of the Lease, to cooperate fully with Thor's auditors and to disclose and make available at all

times during the audit all invoices, bills and documentation justifying the center expenses and American Signature's proportionate share.  Plaintiff also asserts claims for specific performance.

In support of this Complaint, Plaintiff avers as follows:

## INTRODUCTION

1.      On December 21, 2009, plaintiff American Signature entered into a lease with landlord Thor for 52,500 square feet of retail space in a Cheltenham shopping mall in which American Signature operates a furniture store ("the Lease").

2.      By the terms of the Lease, American Signature pays a minimum annual rent of $350,000 for 2010 and 2011 and is also obligated to pay its proportionate share of real estate taxes, insurance and "reasonable costs and expenses incurred by Landlord in the operation, maintenance and repair of Common Areas of the Center" ("Center Expenses").  A true and correct copy of the Lease is attached as Exhibit A, *see* Articles 1(G, I, J &K) & 5(B).

3.      Thor sent American Signature an invoice for taxes, insurance and Center Expenses totaling $717,429.62.  The invoice was dated January 14, 2011 but American Signature did not receive it until March 2011.  A copy of the statement is attached as Exhibit B.

4.      American Signature reviewed the invoice and contacted Thor, noting several discrepancies and requesting an explanation of the charges as well as supporting statements and documentation as required under the Lease.

5.      As a result of this inquiry, Thor reduced the amount invoiced by $140,000.

6.      Despite attempts by American Signature to obtain from Thor justification for the Center Expenses and calculation of American Signature's proportionate share, on April 11, 2011, Thor sent American Signature a default notice for nonpayment of, *inter alia*, American Signature's proportionate share of taxes, insurance and Center Expenses in the amount of $916,147.49 for the partial lease year from June 2010 to approximately April 2011.  A true and correct copy of the April 11, 2011 Notice of Default is attached as Exhibit C.

7.      In violation of the plain language of the Lease, Thor did not use the definition of "proportionate share" set out in Article 5(A) of the Lease to calculate the amount due by American Signature.

8.      Despite the unreasonable amount billed by Thor, American Signature cured the alleged default and exercised its right to an audit under the Lease.  *See* April 21, 2011 letter from M. Garrett to Thor.  A true and correct copy of the letter is attached as Exhibit D.

9.      American Signature exercised its right under Article 5(D) of the Lease to an audit of all documents supporting charged Center Expenses and calculation of American Signature's proportionate share.

10.      American Signature's auditor, based on the information made available to it, determined that Thor had overcharged American Signature by at least $384,416.  A true and correct copy of the August 19, 2011 Audit Report is attached as Exhibit E.

11.      In violation of its obligations under Article 5(D), Thor refused to fully cooperate with the audit and refused demand from American Signature's in-house counsel for

full access to all documentation supporting the charged Center Expenses pursuant to its right to audit to determine the extent of American Signature's overpayment to Thor.

12.    American Signature's auditors believe that, if Thor provided access which would permit a complete review of Thor's invoices, bills and documentation, additional overcharges by Thor will be revealed for which American Signature would be entitled to a refund under Article 5(D) of the Lease.

13.    In further violation of the plain language of the Lease, Thor listed in its default notice a commencement date of June 1, 2010 for payment of rent and other expenses under the Lease.  But Thor did not trigger the commencement date provision under the Lease until it delivered a tappable sanitary drain to American Signature on May 11, 2010.  Under Article 2(D) of the Lease, the rent commencement date occurred ninety days later, that is, on August 9, 2010.

14.    Also contrary to the provisions of the Lease, before claiming payment for Center Expenses, insurance and taxes, Thor failed to provide American Signature with a reasonable estimate – or any estimate at all – of Center Expenses and a statement showing the actual Center Expenses, broken down by category.

15.    Accordingly, plaintiff American Signature now seeks relief from this Court, including, *inter alia*, a declaration that Article 5 governs the calculation of American Signature's proportionate share of taxes, insurance and Center Expenses; a declaration of what American Signature's proportionate share is; a declaration that the rent commencement date is August 9, 2010; a declaration that Thor is obligated to disclose and make available at all times during the audit all invoices, bills and documentation justifying the Center Expenses and

American Signature's proportionate share; and an order that Thor specifically perform its obligations under the Lease.

## PARTIES

16.     Plaintiff American Signature, Inc. is a corporation organized under the laws of Ohio with its principal place of business at 4300 E. 5th Avenue, Columbus, Ohio, 43219.

17.     Defendant Thor Cheltenham Mall, L.P. is a corporation organized under the laws of Delaware with its principal place of business at c/o Thor Equities, LLC, 25 West 39th St., New York, NY 10018.

18.     Defendant Thor Equities, LLC is a corporation organized under the laws of Delaware with its principal place of business at 25 West 39th St., New York, NY 10018.

## JURISDICTION AND VENUE

19.     Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over this action, as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20.     On information and belief, Thor has purposefully availed itself of the privilege of doing business in this District and has continuous and systematic dealings with this District, and is therefore subject to personal jurisdiction in this District.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and are occurring in this District.

## FACTUAL BACKGROUND

### CALCULATION OF PROPORTIONATE SHARE OF CENTER EXPENSES, TAXES & INSURANCE

22.     Under Article 5 of the Lease, American Signature is required to pay its proportionate share of taxes and Center Expenses. *See also* Article 1(I, J).

23.     Article 1(K) of the Lease requires American Signature to pay its proportionate share of insurance.

24.     Article 5(A), governing taxes, sets out the definition of Tenant's Proportionate Share:

> "Tenant's Proportionate Share" shall mean that percentage that the total leasable square feet of the Premises bears to the total leasable square feet of the Shopping Center.

25.     Section 5(B), governing Center Expenses, states that "[s]ubject to the remainder of this Section 5B, during the term of this Lease, Tenant agrees to pay Landlord, as additional Rent, Tenant's Proportionate Share (as defined in Section 5(A) above) of all reasonable costs and expenses incurred by Landlord in the operation, maintenance and repair of Common Areas of the Center."

26.     Section 5(B) also enumerates items that "shall be excluded, deducted or credited from the Center Expenses when computing Tenant's Proportionate Share of same:"

> (i)     Gross revenues from charges, if any, made for the use of parking facilities and other Common Areas or facilities of the Center (including, without limitation, the sale or rental of advertising space).

(ii)   Net recoveries received by the Landlord from tenants as a result of any act, omission, default or negligence or as the result of beaches by tenants of certain provisions of their leases and/or other amounts received by Landlord from third parties, which recoveries and/or amounts reimburse Landlord or reduce the Center Expenses, provided that any of the foregoing recoveries previously charged as Center Expenses and Tenant contributed its Proportionate Share of such Center Expenses.

(iii)   The cost of the land underlying and the construction of the Center, whether initially or in connection with any replacement or expansion thereof and whether mandated by law or otherwise, including, without limitation, costs of correcting (a) defective conditions in the Center resulting from defects in or inadequacy of the initial design or construction of the same, or (b) code violations, including the payment of fines or citations in connection therewith.

(iv)   The depreciation or amortization of the Center or any part thereof or any equipment or other property used in connection therewith.

(v)   The initial cost of the installation of the parking areas or facilities or the amortization or depreciation of such initial cost.

(vi)   The cost of providing or performing improvements, work or repairs to or within (a) any portion of the premises or any other tenants or occupants in the Center, (b) any other building which is not part of the Common Areas, or (c) any portion of the Center the use of which is not available to Tenant.

(vii)   The initial cost of the installation of the parking areas or facilities or the amortization or depreciation of such initial cost.

(viii)   The cost of providing or performing improvements, work or repairs to or within (a) any portion of the premises or any other tenants or occupants in the Center, (b) any other building which is not part of the Common Areas, or (c) any portion of the Center the use of which is not available to Tenant.

(ix)   Any reserves for future expenditures or liabilities which would be incurred subsequent to the then current accounting year.

(x)   Any bad debt loss, rent loss or reserves for bad debt or rent loss.

(xi)   Legal fees, audit fees, leasing commissions, advertising expenses and other costs incurred in connection with (a) the original development or original leasing of the Center, (b) the future re-leasing of the Center, (c) any advertising or promotion of the Center or any part thereof, and (d) disputes with other tenants or third parties.

(xii) …

(xiii) …

(xiv) …

(xv)  Net recoveries from insurance policies taken out by the Landlord to the extent that the proceeds reimburse Landlord for expenses which have previously been included on which would otherwise be included in the Center Expenses.

(xvi)  Contributions to the Center Expenses by tenants or occupants whose space is permitted by provisions in the Lease to be excluded from the denominator of the Tenant's Proportionate Share.

(xvii)Costs associated with repairs or improvements the need for which arose prior to the date of this Lease.

(xviii)   Any management costs or fees of any kind that are paid for management or supervising functions performed by the Landlord or by some other entity, whether or not the cost or fee is paid to a third party or paid to the Landlord, except that administrative and onsite management costs associated with managing the Center shall be permitted in Center Expenses capped at three (3%) percent of such costs.

(xix)  Costs of a capital nature, including all capital improvements, alterations, repairs and/or replacements (for purposes of this Lease, "costs of a capital nature"

shall mean the cost of any item or service the useful life of which exceeds 36 months).

(xx)    Costs relating to the negligence of Landlord or its contractors, agents or employees or the payment of any claims or damages relating to the same.

27.    Article 5(C)(i) requires that "Landlord shall reasonably estimate in advance of each calendar year the amounts Tenant shall owe for Center Expenses for any full or partial calendar year of the Term."

28.    Thor did not provide American Signature with an estimate of Center Expenses until after it claimed payment for those expenses, and the estimate was not reasonable.

29.    In March 2011, American Signature received an invoice from Thor, dated January 14, 2011, for taxes, insurance and Center Expenses in the amount of $717,429.62.  The invoice contained no breakdown by category of Center Expenses.

30.    After conducting an internal review, American Signature contacted Thor for an explanation and documentary support for its charges.

31.    In response to this request, Thor deducted $140,000 from the invoiced amount.

32.    Article 5(C)(ii) requires that "[w]ithin ninety (90) days after the end of each calendar year, Landlord shall provide a statement … to Tenant showing: (a) the amount of actual Center Expenses for such calendar year, with a listing of amounts for major categories of Center Expenses, (b) any amount paid by Tenant towards Center Expenses during such calendar year on an estimated basis, and (c) any revised estimate of Tenant's obligations for Taxes and Center Expenses for the current calendar year."

33.     Thor did not provide American Signature with such Statement until the middle of April 2011, after it claimed payment for Center Expenses and after American Signature questioned the charges.

34.     Despite attempts by American Signature to obtain from Thor justification for the Center Expenses and calculation of American Signature's proportionate share, Thor sent American Signature an April 11, 2011 Notice of Default ("Notice of Default"). The Notice of Default claimed that American Signature owed $916,147.49 in past due base rent and its proportionate share of real estate taxes, insurance and Center Expenses for June 2010 to approximately March 2011, as well as an electrical upgrade charge. *See* Ex. C.

35.     On April 21, 2011, American Signature responded to the Notice of Default and remitted payment for the undisputed electrical upgrade charge and a prorated minimum rent for August 2010. American Signature expressed shock in its response at the charges claimed by Thor because the amount charged for Center Expenses alone far exceeded what could be considered reasonable costs compared to the annual minimum rent under the Lease, which is $350,000 for 2010 and 2011. *See* Ex. D.

36.     Notwithstanding its alarm, American Signature determined that, in good faith, it would cure the alleged default noticed by Thor by paying the balance of $916,147.49 (which it did by wire transfer on April 27, 2011) and then exercise its right to audit and recover the overpayments.

37.     In its response to Thor dated April 21, 2011, American Signature gave notice that it was exercising its right under Article 5(D) of the Lease to conduct an audit of Thor's records. *See* Ex. D.

38.     Article 5(D) of the Lease provides that "[a]t its option, Tenant may cause, at any reasonable time, upon (7) days prior written notification to Landlord and during normal business hours in landlord's corporate office (but not more than once in any lease year), a complete review and audit to be made of landlord's invoices, bills and documentation justifying the Center Expenses and Tenant's proportionate Share of these costs."

39.     Article 5(D) further provides that "any overpayment by tenant revealed by such audit shall promptly be refunded by Landlord.  In addition, if such an audit discloses that tenant has been charged three percent (3%) or more in excess of the amount actually owed by Tenant, landlord shall be responsible for and reimburse Tenant for the reasonable cost of the audit within thirty (30) days of Tenant's demand for the same."

40.     American Signature retained Real Estate Auditing Services, Inc. ("REAS") to perform an audit and determine the accuracy of expenses billed to American Signature by Thor.

41.     In violation of its obligations in Article 5(D) of the Lease, Thor did not provide all documentation supporting the charged Center Expenses or American Signature's proportionate share.

42.     Further, Thor denied or refused to respond to requests to access this information from REAS and American Signature's in-house counsel.

43.     On August 19, 2011 REAS issued its Preliminary Report ("Audit Report"), finding that American Signature should receive a refund of at least $384,416.

44.     The Audit Report found that Thor included in its charges for Center Expenses items and amounts that must be excluded under the Lease or are not standard in the industry.

45.     Thor included $139,469 in roof repairs as part of the expenses charged to American Signature.

46.     Article 11(C) of the Lease provides that "Landlord shall at Landlord's sole cost and expense, keep the *roof*, foundation . . . and structural components of the Premises and the building of which the premises are part in good working order and repair . . . ." (emphasis added).

47.     Thor included tenant-specific expenses in the charges it billed to American Signature.

48.     Tenant-specific expenses must be excluded from the calculation of Center Expenses pursuant to Article 5(B)(vi) (quoted above in Paragraph 26).

49.     Thor did not include a credit for gross revenues from a fireworks vendor who sells fireworks on the edge of the parking lot.

50.     Article 5(B)(i), quoted above in Paragraph 26,  requires that any gross revenues from charges made for the use of parking facilities and other Common Areas are to be credited against Center expenses.

51.     Thor included marketing and overhead expenses that should already have been covered by the management fee and excluded from the Center Expenses under Article 5(B)(xi)&(xv).

52.     Thor included vacant space expenses as part of the Center Expenses billed to American Signature.

53.     It is standard in the industry for the landlord to absorb any costs associated with vacant space.

54.     Finally, Thor included contribution credits by other large retailers against the charges made to American Signature.

55.     REAS has not been able to verify the accuracy of the contribution credits billed to American Signature because Thor has refused (and continues to refuse) to provide any supporting documentation on how those contribution credits were calculated.  Ex. E.

### RENT COMMENCEMENT DATE

56.     The "commencement date" under the Lease for the purposes of calculating base rent and other expenses due under the Lease is defined as follows in Article 1(D):

> Commencement Date:  **The earlier of:  (i) Ninety (90) days after delivery of the Premises to the Tenant, with "Landlord's Work" substantially completed or (ii) date that Tenant shall first open the store for business.**  It is anticipated by the parties hereto that the Landlord shall deliver possession of the Premises sixty (60) days after the Lease execution (the "Anticipated Delivery Date"[sic].  For purposes hereof, Substantial Completion shall mean that all of Landlord's Work in the in the [sic] Premises is substantially complete and any remaining Landlord Work, if any, consists of minor punchlist items and such Landlord's Work

13

shall have reached that state of completion such that Tenant could then proceed to commence Tenant's Work, without unreasonable interference by reason of those items still required to complete Landlord's Work… (emphasis added).

57.     Landlord's work was not substantially completed until May 11, 2010 when Thor delivered a tappable sanitary drain and water line to American Signature.

58.     Thus, the commencement date under Article 1(D) is August 9, 2010 that is, 90 days after May 11, 2010.

59.     American Signature notified Thor that there was no tappable sanitary drain on April 20, 2010.  A true and correct copy of the April 20, 2010 letter from American Signature to Thor is attached as Exhibit F.

60.     American Signature never agreed to an earlier commencement date for the Lease.

61.      In its April 11, 2011 Notice of Default, Thor claimed that the commencement date under Article 1(D) was June 1, 2010 and that Thor had delivered the premises with "Landlord's Work" work substantially completed on March 3, 2010.

62.     Thor further claimed in its Notice of Default that American Signature owed $916,147.49 in past due base rent and its proportionate share of real estate taxes, insurance and Center Expenses and included charges from June through August 2010.  *See* Ex. C.

63.     In its April 21, 2011 response to Thor's notice of default, American Signature asserted that the commencement date was August 9, 2010.

14

64.     Accordingly, American Signature included with its April 21, 2011 letter payment of $18,817.21 for the prorated base rent for August 2010.  *See* Ex. D.

## COUNT I – DECLARATORY JUDGMENT

### CALCULATION OF PROPORTIONATE SHARE

65.     American Signature incorporates all of the allegations set forth in Paragraphs 1 through 64 above as if fully set forth and restated herein.

66.     Article 5(A) requires American Signature to pay its proportionate share of real estate taxes.

67.     Article 5(B) requires American Signature to pay only "Tenant's Proportionate Share (as defined in Section 5A above) of all reasonable costs and expenses incurred by Landlord in the operation, maintenance and repair of the Common Areas of the Center."

68.     Thor did not use the definition of proportionate share in Article 5 of the Lease to calculate American Signature's proportionate share of taxes, insurance and Center Expenses.

69.     The claimed amount of Center Expenses, taxes and insurance are far more than American Signature's proportionate share, although American Signature is obligated to pay only its proportionate share pursuant to Article 1 (I, J &K) and Article 5 of the Lease.

70.     The claimed amounts of Center Expenses are contrary to the terms of the Lease and unreasonable.

71.     Moreover, the Lease excludes from Center Expenses the items enumerated in Article 5(B).

72.     Thor included items in the Center Expenses charged to American Signature that are specifically excluded under Article 5(B) of the Lease.

73.     American Signature is entitled to a judicial determination that Article 5 of the Lease is the appropriate provision upon which to base calculation of American Signature's proportionate share, and that American Signature is entitled to a refund under Article 5(D) of the Lease for any and all payments in excess of its proportionate share, as well as the cost of the audit if the overpayment exceeds 3% of the accurate charges, and to recover attorneys' fees and costs.

74.     American Signature is further entitled to a declaration of what percentage constitutes its proportionate share of Center Expenses, taxes and insurance under the Lease.

75.     This action involves an actual controversy between American Signature and Thor, and a declaratory judgment is necessary in order to settle and afford relief from uncertainty with respect to the rights, status, and other legal relations between American Signature and Thor.

## COUNT II – DECLARATORY JUDGMENT

### RENT COMMENCEMENT DATE

76.     American Signature incorporates all of the allegations set forth in Paragraphs 1 through 75 above as if fully set forth and restated herein.

77.    Thor did not deliver the premises to American Signature with the Landlord's work substantially completed until it delivered a tappable sanitary drain on May 11, 2011.

78.    Pursuant to Article 1(D) of the Lease, the rent commencement date is "[n]inety (90) days after delivery of the Premises to the Tenant, with "Landlord's Work" substantially completed."

79.    Thus, American Signature is entitled to a judicial determination that the rent commencement date is August 9, 2011, and that any claims for rent or other expenses due before that date are invalid, and to recover attorneys' fees and costs.

80.    This action involves an actual controversy between American Signature and Thor, and a declaratory judgment is necessary in order to settle and afford relief from uncertainty with respect to the rights, status, and other legal relations between American Signature and Thor.

## COUNT III – DECLARATORY JUDGMENT
### LANDLORD'S OBLIGATION TO PROVIDE DOCUMENTATION

81.    American Signature incorporates all of the allegations set forth in Paragraphs 1 through 80 above as if fully set forth and restated herein.

82.    Thor has not provided copies of or access to all information supporting the Center Expenses charged to American Signature or its calculation of American Signature's proportionate share which would allow American Signature's auditors to conduct a complete review and audit.

83.     Article 5(D) of the Lease entitles American Signature to a "complete review and audit to be made of Landlord's invoices, bills and documentation justifying the Center Expenses and Tenant's proportionate share of these costs."

84.     Thor has denied and/or failed to respond to requests for this information from REAS and American Signature's in-house counsel.

85.     American Signature's auditors believe that complete review and audit of information not yet provided by Thor will reveal additional overcharges for which American Signature would be entitled to a refund under Article 5(D) of the Lease.

86.     American Signature is entitled to a judicial determination that, under Article 5(D) of the Lease, Thor must provide all "invoices, bills and documentation justifying the Center Expenses and Tenant's Proportionate Share of these costs" and make these documents available during the course of the audit.

87.     This action involves an actual controversy between American Signature and Thor, and a declaratory judgment is necessary in order to settle and afford relief from uncertainty with respect to the rights, status, and other legal relations between American Signature and Thor.

## COUNT IV – SPECIFIC PERFORMANCE

### PROVISION OF INFORMATION PURSUANT TO AUDIT

88.     American Signature incorporates all of the allegations set forth in Paragraphs 1 through 87 above as if fully set forth and restated herein.

89.     Article 5(D) of the Lease entitles American Signature to a "complete review and audit … of Landlord's invoices, bills and documentation justifying the Center Expenses and Tenant's Proportionate Share of these costs" upon seven days written notice by tenant.

90.     Thor has not made all invoices, bills and documentation allegedly justifying the Center Expenses and tenant's proportionate share available to REAS, despite notice by American Signature and several requests by REAS.

91.     As of this filing, Thor has denied or refused to respond to requests for this information from REAS and American Signature's in-house counsel.

92.     Thor is in default of the Lease.  *See* Ex. A, Lease at Article 23(A).

93.     Article 23(B)(2) of the Lease provides that tenant may seek specific performance for any covenant or agreement of Landlord in the event of a default by Thor.

94.     Accordingly, American Signature is entitled to specific performance of Article 5(D) by Thor, and to recover attorneys' fees and costs pursuant to Article 31 of the Lease.

## COUNT V – SPECIFIC PERFORMANCE

### PROVISION OF REASONABLE ESTIMATE & STATEMENT OF CENTER EXPENSES

95.     American Signature incorporates all of the allegations set forth in Paragraphs 1 through 94 above as if fully set forth and restated herein.

96.     Thor is required under Article 5(C)(i) of the Lease to "reasonably estimate in advance of each calendar year the amounts Tenant shall owe for Center Expenses for any full or partial calendar year of the Term."

97.     Thor is required under Article 5(C)(ii) to submit to American Signature "[w]ithin ninety (90) days after the end of each calendar year …a statement … showing: (a) the amount of actual Center Expenses for such calendar year, with a listing of amounts for major categories of Center Expenses, (b) any amount paid by Tenant towards Center Expenses during such calendar year on an estimated basis, and (c) any revised estimate of Tenant's obligations for Taxes and Center Expenses for the current calendar year."

98.     Thor did not provide a reasonable estimate of Center Expenses in advance of claiming payment for Center Expenses.

99.     Nor did Thor provide a statement of actual Center Expenses in advance of claiming payment for Center Expenses.

100.     Because Thor failed to provide a reasonable estimate of Center Expenses or a statement of actual Center Expenses in advance of claiming payment, Thor was not entitled to declare a default under the Lease or terminate the Lease for American Signature's failure to cure such alleged default.  Ex. A, Lease at Article 5(B).

101.    Thor is in default of the Lease for failing to provide a reasonable estimate of Center Expenses or a statement of actual Center Expenses in advance of claiming payment. *See* Ex. A, Lease at Article 23(A).

102.    Article 23(B)(2) of the Lease provides that tenant may seek specific performance for any covenant or agreement of Landlord in the event of a default by Thor.

103.    Accordingly, American Signature is entitled to specific performance of Article 5(C)(i) and (ii) on the part of Thor, both retroactively as is possible and prospectively, and to recover attorneys' fees and costs pursuant to Article 31 of the Lease.

**WHEREFORE**, plaintiff American Signature requests judgment in its favor and against defendant Thor as follows:

A.      a declaration that calculation of American Signature's proportionate share is dictated by Article 5 of the Lease;

B.      a declaration that the rent commencement date is August 9, 2010;

C.      a declaration that Thor is obligated to cooperate fully with American Signature's audit and to disclose and make available at all times during the audit all invoices, bills and documentation justifying the Center Expenses and the calculation of American Signature's proportionate share;

D.      an order directing Thor to release to American Signature's auditors all information relevant to its calculation of Center Expenses and American Signature's proportionate share thereof;

E.      an order directing Thor to provide American Signature with a reasonable estimate and statement of Center Expenses;

F.      all costs and expenses incurred by American Signature in seeking the foregoing declarations and specific performance;

G.      interest to the full extent allowed by law; and

I.      attorneys' fees, costs, and such other relief as the Court may deem appropriate.


Dennis Suplee (Pa. I.D. No. 03336)
Leah Snyder Batchis (Pa. I.D. No. 203605)
Laura Navarro (Pa. I.D. No. 209329)
*Attorneys for Plaintiff*
*American Signature, Inc.*

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
(215) 751-2000

Dated:  December 22, 2011.